UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

KENTON JONES,                           )
                                        )
    Plaintiff,                          )       No. 6:18-CV-21-REW-HAI
                                        )
v.                                      )       OPINION & ORDER
                                        )
PROGRESSIVE CASUALTY                    )
INSURANCE COMPANY,                      )
                                        )
    Defendant.

\*\*\* \*\*\* \*\*\* \*\*\*

    The Court previously granted Progressive leave to file a successive Rule 56 motion, limited to its contention that Jones can prove no recoverable damages springing from the lone surviving FMLA interference claim. *See* DE 77. Defendant's motion (DE 78)—now fully briefed, *see* DE 79 (Response), DE 80 (Reply)—stands ripe for review.

**I.     APPLICABLE STANDARD**

    A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

    The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553

(1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 F.3d at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S. Ct. at 2552; *see also id.* at 2557 (Brennan, J., dissenting) ("If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." (emphasis in original)).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a

jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444–45 (6th Cir. 2006).

## II. DISCUSSION

*Damages as a Trial Predicate*

First, the Court rejects out of hand Plaintiff's claim that a material dispute as to the existence of damages is not, or should not be, a trial predicate. *See* DE 79 at 5–7. To the extent Jones suggests that the Court has construed damages as a "required element" of an interference claim, the Court's prior analysis belies the theory. *See* DE 70 at 5 ("[D]amages are not, in the Sixth Circuit's typical formulation, an explicit element of an FMLA claim, *see Hodnett v. Chardam Gear Co., Inc.*, 749 F. App'x 390, 393–94 (6th Cir. 2018)[.]"); *id.* at 5 n.4 (describing "§ 2617 damages as an essential but **non-elemental** predicate for Plaintiff's interference claim" (emphasis added)). Further, and despite Jones's policy-based theories, the statute, per the Supreme Court's reading, is unequivocal:

> To prevail under the cause of action set out in § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 . . . . Even then, **§ 2617 provides no relief unless the employee has been prejudiced by the violation**: The employer is liable only for compensation and benefits lost 'by reason of the violation,' § 2617(a)(1)(A)(i)(I), for other monetary losses sustained 'as a direct result of the violation,' § 2617(a)(1)(A)(i)(II), and for 'appropriate' equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B).

3

*Ragsdale v. Wolverine World Wide, Inc.*, 122 S. Ct. 1155, 1161 (2002) (emphasis added). Thus, unless Jones can show a genuine dispute as to the existence of FMLA-recoverable damages, Progressive is "entitled to judgment as a matter of law[.]" Fed. R. Civ. P. 56(a); *see Carroll v. Potter*, No. 3:05-CV-108-S, 2007 WL 3342298, at *3 (W.D. Ky. Nov. 7, 2007) ("Courts have recognized that an employer is entitled to summary judgment when the plaintiff cannot show that she is entitled to any remedy set forth in § 2617 as a result of an alleged violation.") (collecting cases); *Lapham v. Vanguard Cellular Sys., Inc.*, 102 F. Supp. 2d 266, 270 (M.D. Pa. 2000) (granting second summary judgment motion, after granting an initial Rule 56 motion as to retaliation, on § 2615(a)(1) theory and finding that "[§] 2617 simply leaves no room for recovery when an employee does not sustain economic loss during the period of his or her employment").

*FMLA Damages Generally*

Defendant presents a well-supported argument that Plaintiff has no FMLA-recoverable damages. *See* DE 78; *see also* DE 60-24 & 80-1 (Sworn Decls. of Progressive "Leave Specialist" Sharon Kemp). Thus, to survive summary judgment, Jones must marshal a triable showing of "compensation and benefits lost 'by reason of the violation,' § 2617(a)(1)(A)(i)(I), [or] for other monetary losses sustained 'as a direct

result of the violation,' § 2617(a)(1)(A)(i)(II)[.]" *Ragsdale*, 122 S. Ct. at 1161.[1] Put differently, Plaintiff must establish a Rule 56-sufficient dispute as to: (1) damages in the form of (A) lost compensation, (B) lost benefits, or (C) actual monetary losses, and (2) a nexus between those damages and an FMLA violation.

Before turning to Jones's theories, some brief background. Progressive lawfully[2] terminated Jones on January 17, 2017. *See* DE 70 at 19–32. Given the Court's prior rulings, only Jones's "interference claim, though abridged, survives." *Id.* at 31. The sole live claim concerns Plaintiff's allegation that Progressive, on January 11, 2017, forced him to return to work (on light duty), despite his right to continue on FMLA leave. *See id.* at 18–19. A nexus between this alleged interference and FMLA-recoverable damages is what Progressive's well-supported motion targets, and what Jones must present proof on for the claim to survive. *See* 29 U.S.C. § 2617(1)(A)(i). Because Jones fails to show a triable issue as to the existence of damages or the requisite causal link, Progressive is entitled to summary judgment.

*The Alleged Damages*

<u>First</u>—Jones contends that Progressive "docked Mr. Jones'[s] pay by $2554.33[,]" corresponding to "69 hours because it believed, falsely, that Mr. Jones should have been

---

[1] The FMLA also authorizes "'appropriate' equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B)." *Id.* However, Jones, per the pleadings and briefing, is not seeking any equitable remedy. *See* DE 25 (Am. Compl.) at ¶ 75; DE 79. Even if he had pursued such a remedy, Jones's prior failure to clear the Rule 56 hurdle with his retaliation claim, in case context, shuts the door on any § 2617(a)(1)(B) contemplated equitable relief. *See Ragsdale*, 122 S. Ct. at 1161 ("The remedy is tailored to the harm suffered."); *cf. McKennon v. Nashville Banner Pub. Co.*, 115 S. Ct. 879, 886 (1995) (holding, in the ADEA milieu, that "[i]t would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds").

[2] Or, at least, Plaintiff failed to create a triable issue as to unlawful termination.

at work during the same time period that he was allowed to be on FMLA." DE 79 at 2. In support, Plaintiff points to 4 record items: (1) Jones's "Hours & Earnings" statement for the January 15, through January 28, 2017, pay period, DE 79-1 (Ex. 1); (2) Jones's 2017 Progressive W-2, DE 79-2 (Ex. 2); (3) an excerpt from Jones's deposition, DE 79-4 (Ex. 4); and, (4) a December 22, 2016, email from Jacqueline Jerome that describes Progressive's "general rule of thumb for appointments during work hours:"

> You are encouraged to obtain treatment for a work-related injury during your lunch hour or when you are not scheduled to work. Should it become necessary to obtain treatment during your scheduled work hours, you will be paid regular time for the period of time you are present at your medical treatment, including traveling to and from your appointment. You are expected to return to work after the treatment is completed for the balance of your scheduled work time. If you do not return to work and are unable to provide written medical documentation supporting the reason why you did not return, then you must charge the time missed to Earned Time Benefit (ETB) or DOCK time.

DE 79-3 (Ex. 3).

As to the pay stub, the document does not show that Progressive deducted <u>any</u> compensable time during the relevant period. The document covers the final two days of Jones's employment, January 16 & 17, 2017, and reflects no "Dock" time during that period. *See* DE 75-1 (reporting nothing in the "Dock" row for "HOURS" in the "CURRENT" period). Instead, the record reveals Progressive's designation of 69 "Dock" hours for Jones during the **year** 2017. *See id.* (reporting "69.00" in the "Dock" row for "HOURS" for the "YEAR-TO-DATE"). Critically, Plaintiff offers nothing to show that any of the 69 'Dock' hours reflected in his paystub relate to hours that Jones worked or for which he was otherwise entitled to compensation. Put simply, the document does not, itself, suggest, as a reasonable inference, that 'Dock' hours represent FMLA-recoverable lost compensation or benefits.

6

As to the W-2, Jones cites the record twice and does not explain its relevance. *See* DE 79 at 2–3. The Court sees none, although the W-2 total matches the payroll year-to-date gross.

As to Jones's deposition, Plaintiff testified: "I was docked like 60 or 70 hours, something in that neighborhood[.]" DE 79-4, Jones Dep. at 186. Jones explicitly claimed that such hours were taken from his alleged 400-plus hours of accrued "vacation time[.]" *Id.* at 187. As the Court previously explained:

> Progressive's "Leave Specialist" [Sharon] Kemp, by sworn declaration, states that, based on Defendant's records and consistent with Defendant's Earned Time Benefit ("ETB") policy, Jones was paid all "earned and accrued time off." DE 60-24 (Kemp Declaration). Specifically, Kemp avers that Progressive paid Jones $13,570.14 for 366.57 earned vacation hours. *Id.* at ¶ 4.

DE 70 at 34–35. The Court also detailed other objective record proof that directly contradicts Jones's testimony regarding vacation hours: *See id.* at 37–38 ("Jones's own pay records corroborate Kemp's claim that Progressive followed its vacation-time policies, including full post-termination compensation for any ETB balance."). Further,

> Jones (as the Court reads the transcript) does not claim that Progressive *improperly* deducted vacation time. *See* DE 64-17 at 4 (Dep. at 187: "[O]ut of my vacation time of 400 plus hours they took out so many hours. What for, I don't know."); *id.* (Dep. at 188: Jones, when asked what compensation he felt he was owed, stated that he wanted to "figure out . . . what" the basis was for the reductions).

*Id.* at 36. At best, Jones's testimony consists of "conclusory allegations" as to vacation-hour deductions "unsupported by specific evidence[.]" *Hinson v. Tecumseh Prod. Co.*, 234 F.3d 1268 (table), 2000 WL 1597947 (6th Cir. 2000). When, as here, a movant provides a personnel department member's sworn contrary declaration regarding employment records, a plaintiff's bald claims "are insufficient to establish a genuine

7

dispute of material fact." *Id*.[3] Thus, Jones's deposition does not meaningfully advance his effort to prove lost compensation or benefits.

Finally, Jerome's email does not support the inference that Jones poses. Specifically, nothing in that communication corroborates, directly or deductively, Plaintiff's claim that Progressive "docked Mr. Jones' pay by 69 hours because it believed, falsely, that Mr. Jones should have been at work during the same time period that he was allowed to be on FMLA." DE 79 at 2.[4] The email represents Progressive's entirely defensible (and logical) position that an employee that fails to return to work after an appointment without a documented medical basis must either claim the time as vacation (ETB) hours or "DOCK time." *See* DE 79-3 at 2.[5] Progressive's substantiated take is that 'Dock' is merely "a timekeeping category that accounts for hours that are not worked and unpaid." DE 60-24 ("Leave Specialist" Kemp's Decl.). Jerome's communication actually supports (and no other record proof contradicts) that claim. The Progressive policy reflected in the email identifies one way an employee may accrue non-

---

[3] This makes sense under the FMLA scheme. The relevant regs make clear that accrual of paid leave—and procedures for substitution of same during a period of generally unpaid FMLA leave—is subject to "policies of the employer[.]" 29 C.F.R. § 825.207(a). Jones certainly offers no proof that Progressive failed to follow its own policies regarding accrual or use of paid leave. Kemp, a "Specialist" in this area, avers full compliance.

[4] Given the January 17 termination, Plaintiff was a Progressive employee for, at most, 12 workdays during 2017. Jones concedes that he "was not present at work" for seven of these days. *See* DE 79 at 2. Thus, Jones worked, at most, five days during 2017, representing 40 work hours. Plaintiff entirely fails to explain the inconsistency in a claim that Progressive "docked" his pay to the tune of 29 hours more than he ever in fact worked.

[5] To the extent Jones relies on the Jerome message for his claim that Progressive "forced [him] to use sick time[.]" DE 79 at 1, the Court notes that the "FMLA specifically allows an employer to require an employee to substitute accrued paid [ ] leave for unpaid FMLA leave." *Cox-Frietch v. Ohio Bureau of Workers' Comp.*, 507 F. App'x 561, 564 (6th Cir. 2012) (citing 29 U.S.C. § 2612(d)(2)(B); 29 C.F.R. § 825.207(a)). Thus, any forcible ETB use is not an FMLA-compensable lost benefit. The absence of proof as to any nexus between such vacation-hour use and the interference claim is also fatal to this theory.

compensable 'Dock' hours. Ultimately, Jones fails to persuasively explain how proof that Progressive does not pay employees for hours of missed work without a medical excuse (following a medical appointment) meaningfully contributes to his theory.

In sum, Plaintiff shows only that his temporal total included 69 'Dock' hours during 2017. However, Jones offers nothing that a reasonable juror could rely on to conclude that 'Dock' hours represent "compensation and benefits lost . . . [or] other monetary losses sustained[.]" *Ragsdale*, 122 S. Ct. at 1161. Rather, the record shows that Progressive "utilized the 'dock' timekeeping category simply to reflect hours that are not worked and unpaid[.]" DE 80-1 at ¶ 7 (Kemp 2nd Decl.). Plaintiff offers no proof, *e.g.*, that he worked during or was otherwise entitled to compensation, that Progressive mis-designated or improperly withheld payment for any of the disputed 69 hours. *Id.* at ¶ 8.[6]

<u>Second</u>, Jones's contention regarding premature termination of his short-term benefits fares no better. DE 79 at 5. Plaintiff, upon returning, was paid for his work (Jones does not argue otherwise). *See* DE 80-1 at ¶ 8. Thus, he suffered no loss, *i.e.*, damages, from the premature return. As to Jones's claim that he was entitled to short-

---

[6] Jones's claim that Progressive forced him "to use both an hour of sick or disability time" with overlapping 'Dock' time is also fatally flawed. *See* DE 79 at 4. First, nothing in the record shows any overlap. Second, the Court has already explained why a forcible sick-time-use theory is meritless. *See supra* n.4. Third, Progressive's payments for any "sick" or "disability" time were compensation over and above Jones's FMLA leave entitlement. Logically, any of Jones's pay for "sick" or "disability" time was for periods during which Jones was **off work**, *i.e.*, receiving (at minimum) exactly what Plaintiff's interference claim alleges he was denied. Fourth, Plaintiff fails to identify any link between the interference alleged, denial of Jones's entitlement to unpaid time off, and payments that **preceded** his alleged forcible return. Ultimately, there is simply no proof that the alleged forcible return had any impact on Jones's "sick" or "disability" designations in the days preceding January 11, 2017.

term disability until "January 31[,]" he fails to offer any proof that he was entitled to such benefits after the January 17 termination.[7]

In sum, Jones presented no triable showing of lost benefits, compensation, or any other monetary damage. Progressive, on this basis alone, is entitled to summary judgment.

*The Alleged Nexus*

Further, Jones presents no triable showing of a causal nexus between his damage and interference claims. Though Plaintiff baldly posits a link between 'Dock' and the FMLA violation alleged, the briefing offers little explanation (and identifies no proof) for the theorized connection. For instance, Jones alleges that if Progressive had not forced Plaintiff "to return to work, then Progressive would not have docked Mr. Jones's pay." DE 79 at 4. Yet, attorney argument, no matter how often repeated, *see, e.g.*, *id.* ("The docking of Mr. Jones's pay is fundamentally related to Progressive's actions in forcing Mr. Jones to return from leave"), does not amount to proof. Evidence tying a demonstrable loss to Progressive interference is what Jones needed. His failure to supply such proof, facing a well-supported motion, dooms the endeavor.

Moreover, Plaintiff's theorizing is, on several points, simply illogical. Proceeding down one Jones-blazed hypothetical trail, if Progressive "had administered its . . . FMLA policies consistent with the law, and allowed Mr. Jones to stay on FMLA leave," (DE 79 at 4) then Jones actually would have been paid **less** than what he actually received.

---

[7] Further, even if Jones had proven such an entitlement such payments, Plaintiff submits nothing to connect the loss of that entitlement, given the intervening termination, to his interference theory.

Again, the FMLA gave Jones no entitlement to paid leave. *See* 29 C.F.R. § 825.207(a).[8] Thus, if Progressive fully accounted for Jones's FMLA status, and did not force him to return to work, then Plaintiff would have continued on **unpaid** leave. Jones's damage theories are logically divorced from his actual interference claim. For instance, Plaintiff's 'Dock' and ETB contentions concern periods that pre-dated the alleged interference. Jones entirely fails to explain how Progressive's allegedly misguided belief regarding Jones's light-duty return obligation retroactively impacted precedent pay decisions.

Ultimately, Plaintiff offers only an amorphous (frankly, confusing), conclusory argument that 'Dock' hours were somehow tethered to his FMLA status. Despite counsel's **argument**, the underlying **evidence**—the pay stub, Jones's deposition, Jerome's email—suggests no link between 'Dock' hour designations and the interference claim. Indeed, the only on-point proof is wholly contrary. *See, e.g.*, DE 60-24 & 80-1 (Kemp Decls.).[9] Jones, himself, testified that he did not believe Progressive owed him anything other than allegedly withheld **vacation** hours[10] and did not claim that such withholding had any connection to his forced return to work. DE 79-4 (Dep. at 187–88).

---

[8] If Plaintiff's argument is that Progressive would have paid Jones for the 7 days he was off work, January 2–6, 9 & 10, if Progressive had recognized his FMLA entitlement, it fails for the same reason. Plaintiff's interference claim—that Progressive coerced him into returning to work—is foundationally inconsistent with a damage theory based on a period during which Progressive gave Jones exactly what he was entitled to under the FMLA, *i.e.*, unpaid leave.

[9] It is worth noting that Plaintiff, despite ample opportunity, *see* DE 7 (Scheduling Order), never pursued depositions for Kemp or any other Progressive employee with expertise on Defendant's pay practices. Nor did Plaintiff question, from what this record shows, the deposed Progressive employees on the 'Dock' subject matter. *See* DE 60-15, 64-16, 64-22, 69-1, 69-3 (Dep. Excerpts).

[10] A claim the Court previously rejected as unsupported on this record. DE 70 at 34–38. Jones does not contest, and offers nothing to suggest error in that prior finding.

Plaintiff's current attempts, through briefing, to contort the allegedly interfering event into some kind of trigger for Progressive's 'Dock' designations are factually baseless.

## III. CONCLUSION

Jones, facing a well-supported motion, needed to establish genuine disputes as to (1) lost pay, benefits, or other monetary harm, and (2) a link between such damages and the FMLA violation alleged, *i.e.*, Progressive allegedly coercing Jones to return to work on January 11, 2017. Plaintiff failed on both fronts. Jones offers no proof that a reasonable decider could rely on to find lost compensation, benefits, or other monetary damages. He likewise failed to show any link between any of his meritless damages claims and the interference alleged. Jones offers his own halting deposition allegation that Progressive withheld payments for a non-specific number of **vacation** hours—a claim already rejected—for unspecified reasons. Jones also offers a pay stub showing that Progressive, as a bookkeeping matter, designated 69 hours, in the year 2017, as 'Dock' hours. He points to no proof showing *when* those hours were designated and presents only the Jerome email to support his theory of *why* that categorization attached. But, two fatal problems: First, that communication does not suggest that 'Dock' hours represent any benefit or compensation to which Jones was otherwise entitled. Second, Progressive offers uncontroverted proof explaining the 'Dock' designation that wholly refutes Plaintiff's conclusory arguments suggesting a connection between 'Dock' and Progressive's alleged interference. *See* DE 60-24 & 80-1. Thus, Jones fails create a triable issue concerning FMLA-recoverable damages, and Progressive is entitled to summary judgment. *See Carroll*, 2007 WL 3342298, at *3 ("Because Carroll is not

entitled to any form of relief for the . . . alleged [FMLA] violations . . . [defendant's] motion for summary judgment will be granted[.]").

For these reasons, the Court **ORDERS** as follows:

1. The Court **GRANTS** DE 78;

2. The Court **CANCELS** all scheduled proceedings and deadlines in this matter; and

3. The Court will enter a separate Judgment.

This the 21st day of January, 2020.

Signed By:
*Robert E. Wier*
United States District Judge